Your Honor, the current case of the morning call, Bill to Ringwood v. Deborah Foster at 2-09-473. On behalf of the Avalanche, Mr. Steven Speranza. On behalf of the athlete, Mr. Bernard Marousas. Counsel. Good morning. Good morning. May it please the court, counsel. My name is Steven Speranza. I'm appearing this morning on behalf of the appellant, Deborah Foster. Ms. Foster is the owner of an apartment building in the village of Ringwood. That building is at issue in this case, at the heart of this case. The village of Ringwood, there was a fire at the building in 2006, and the village of Ringwood sued Ms. Foster for demolition of the building. After the fire damaged the building, the suit was brought under the Illinois Municipal Code, section 1131-1. Because the village is seeking demolition of private property, there are constitutional property issues involved in this case. There's a tension between the police power and constitutional rights of property owners. The touchstone for our purpose is really being due process, both procedural and substantive. And you're obviously arguing they were not met in this case, correct? Well, there are several issues involved in the case. The one that we were asked and directed to address was notice, the notice required by the statute. A pre-filing notice that must be given to the owners and the lien holders, and that implicates due process issues. And in this case, we believe that the notice was deficient in a couple of different ways. The one that we were asked to address was the notice to lien holders, which was deficient, was actually absent. There was no notice given to any lien holders. And that is a clear requirement in the statute that 15 days written notice by mail be given to all owners and lien holders. This is before the demolition order or before the action is filed? I believe it's before the action is filed. It doesn't make much sense to characterize it as anything but pre-filing because it's by mail. I know there was some argument by the appellee that the actual filing in the suit would be sufficient notice. That, again, doesn't make sense in light of the statute's requirement that it be by mail. Moreover, in this case, even if the summons and service of the complaint would be sufficient notice to the owner, it wouldn't be sufficient notice to the lien holders because there were no lien holders made party defendants. So you're alleging that notice should have been given to the lien holders before the suit was filed? Right. I think that the language in the statute is fairly clear. What language are you pointing to that would indicate that notice before the action is filed is a precondition to suit? Well, there's two main supports for that. One is the statute itself, which requires that if the corporate authorities wish to apply to the circuit court of the county in which the building is located for an order of authorizing action to be taken with respect to a building, if the owner or owners of the building, including the lien holders of record, after at least 15 days' written notice by mail, so to do, have failed to put the building in a safe condition or demolish it. So, again, notice by mail is quite contrary or quite different from the service of the summons. So that would indicate that it's pre-filing notice. And the Illinois Supreme Court, in the case of the Village of Lakeville v. Stokovich, analyzed the due process status of the statute, whether it met due process. And the court specifically found that it did meet due process requirements. It did satisfy due process requirements. But because there was a pre-filing notice that was required, that 15-day notice, if I could read from the Stokovich opinion, they distinguish the statute involved, the 1131-1, from other ordinances and statutes from other jurisdictions. Other states had ruled those statutes unconstitutional. If the owner didn't have the absolute unfettered right to repair their property, so there wasn't a reasonableness standard, there wasn't a percentage of destruction, nothing, just unfettered right to repair. To cut to the chase, even if we were to agree with your argument that there's a precondition, which requires notice prior to filing suit, clearly you're alleging that the demolition order was entered without notice to the lien holder. Is that correct? That's right, Judge. Your Honor, the lien holder, there was no notice to any lien holder. There was no, the record is completely devoid of any indication that the village attempted to determine whether there were any lien holders. And there's clearly a requirement that lien holders be notified. So there was no attempt. Is it the village's responsibility to determine whether there is a lien holder? I believe there is, Your Honor, because the statute requires the village to give the notice. Again, we believe that it's pre-filing. Before the suit can be filed, notice must be given. That burden is clearly and squarely on the village's, on the municipality, in this case the village of Ringwood. I don't know that there's any way to satisfy the requirement of notice to the owners and lien holders without determining who the lien holders are. So there's no evidence in the record, again, that the lien holders were notified? The record is completely devoid of any notice to a lien holder. Furthermore, the lien holder, there's no, only the owner was a party to the case, was made a party defendant. No lien holder was made a party defendant to the case. That's another deficiency that it's hard to imagine the lien holder's rights being prejudiced without the lien holder being made a party to the case or a party in interest, oftentimes the major party in interest. All right, well, suppose then we send it back and they find out that there's no lien holders. Let's get to the merits of the order to demo the building then. I mean, even if there are lien holders, what does that do to the court's order against your claim? Well, the order can't be entered. It's just a prerequisite for the action. Okay, but it goes back, let's say it goes back and they notify the lien holders they don't care or there are no lien holders. What I'm getting at is I don't know that this was going to give you guys a right to go back and get to the merits again. The lien holders may come in. If they exist, they may come in and make some arguments. So I want to get to the merits of the case against your client because I think that's. . . And I cannot come up with a way that a lien holder can now be made a party to the lawsuit and be bound by prior determinations of the trial court. No, no, I'm not suggesting the lien holders will be bound. I'm talking about your client being bound by the prior determinations. Right, but their interests coincide. They both have ownership, essentially, ownership interests in the property. It's impossible to have two different outcomes. Okay, let's get to the merits. Was the trial court wrong? That's the other part of the order we gave you. It seems like it's more than 50%. There's an ordinance that wouldn't allow it to happen, and that's the point we wanted to get to. Right, and that was the other, the second part of the direction that we were to address was specifically whether the ordinance standard could be used for the requirement that exists, Supreme Court requirement that exists, the burden that's on the trial court, which is determine what the dangerous defects are. These are public safety defects, not just any old defect, you know, that the carpeting is ratty and should be replaced or anything. It's got to be specific. In the Stokovitch case, they were very clear that it had to affect the public safety. In Stokovitch, there were complaints about windows that wouldn't open, for instance, drywall that was damaged. The Supreme Court in Stokovitch did not give that any heed whatsoever, rather talked about possible buildup of methane gas, possible contamination of the water system, so significant things that could actually harm the public. Okay, was there much of a debate here about whether or not this fire-damaged building is a hazard to safety in the way you're describing it? Yes, Your Honor, absolutely. The defendant contends that if there are any public safety defects, there are very few and weren't adequately identified at trial, weren't supported by evidence. For the trial court to make that determination, there has to be expert testimony to support a finding of a dangerous defect. The trial court in and of itself can't take judicial notice of whether moldy drywall or damaged joists are somehow a danger to the public. There was an extensive evidentiary hearing that took place at the trial court level, wasn't there, with a number of contractors testifying? Right. That was not enough to allow the trial court to determine whether the building was quote-unquote dangerous and unsafe? Your Honor, I believe that the evidence in that regard also is deficient because the experts that testified never opined that they posed public safety hazards and or explained how they would. In other words, going back to Stokovitch, the buildup of methane gas, the plumber involved in that case described how that would or could possibly be a public safety defect. In other words, it could lead to an explosion. In this case, none of the people that testified, experts on either side. Now, of course, the defendant doesn't believe there were serious safety defects, but none of the persons who testified testified that there were safety defects and described in what manner they were safety defects. You keep talking about danger to the public. What about danger to somebody that lives there or enters the building? That's not sufficient? Your Honor, I don't believe it is. The structure is unoccupied currently, so someone who lives there, that's not a pertinent viewpoint. No consideration needs to be given to residents. It's an apartment building, and the residents have all moved out pending the restoration of the building, which is what Mrs. Foster would like to do. Someone who enters on the property without permission, that's a trespasser and really is not within the purview of the statute. So you seem to be saying it has to be a general danger to the general public. Is that what you're saying? Exactly so, and I think that's supported by Stokovich. Stokovich holds that? Stokovich, not in so many words. I can't go that far, but it's clear from the opinion that the elements that the court looked to and determined were public safety defects because what they did was reverse the demand, instructed the trial court that it could rely on findings of public safety defects. Those were all clearly defects that could affect persons outside the property, such as contamination of the water system, the buildup of methane gas, possible infestation by rodents who could travel and communicate disease. All right, well, that's an issue that ultimately we have to decide, whether a structure may be deemed dangerous and unsafe, even if the danger is confined to those who are connected to the property rather than the public at large. So we probably don't need to belabor that. That's a matter of statutory construction. We'll have to decide. Why were the trial judge's findings against the manifest weight of the evidence? Again, the standard that the trial judge has to apply and that the trial court did not apply in this case are set forth in the city of Aurora v. Meyer. That's 1967 Supreme Court case. That's reaffirmed by Village of Lakeville v. Stokovich in 2004. The trial judge must determine what the public safety defects are specifically, what specific defects exist, how much the defects would cost to repair, so what's the cost of repairing those defects, and then compare that with the value of the building to determine whether it's reasonable to repair. Is there any reasonable alternative to demolition? Demolition being recognized as a drastic remedy by the Supreme Court. So you're saying only the clarification or remediation of a public safety defect is the only thing that should be weighed against cost of the building or value of the building versus cost of repairs? Yes. So in this case, like the cabinets or new floor, I'll just use the example of the cabinets. That really is not a public safety issue. That's our position. Regardless of whether it affects a small segment of the public or all of the public, you're saying it has to be a certain type of defect. And if it doesn't rise to that level, then we don't count it in the repair column. There may be other repairs necessary for this building to be habitable, but it's not that kind of defect. Is that your position? Yes. The statute does not apply to habitability. There's nothing in the statute that refers to habitability. It's pure and simple public safety, and it's got to be limited to that. In fact, it is an encroaching on the right of the property owner to determine the use of her property. Counselor, your time is up, so you don't have time to rebuttal. Thank you. Counselor, you left your glasses. Oh. I understand. Excuse me. May it please the court. My name is Bernardo Reyes. I'm here for the Village of Ringwood. We received notice from the clerk that you wished us to address two particular points this morning, and I'll attempt to do that. Please look forward. The first point that you wanted us to address was whether or not the repair of the defense nonconforming building became unreasonable under the statute that is 1131-1A of the municipal code because the repairs are forbidden under the circumstances, in this case, by Section 604 of the Village Zoning Ordinance. Section 604 of the Village Zoning Ordinance is authorized specifically and expressly by the Zoning Enabling Act, which is found in Section 11-13-1 of the Illinois Municipal Code. That section provides in part as follows. including without being limited thereto provisions small c for the elimination of such buildings and structures when they are destroyed or damaged in major part. Section 604-1 of the ordinance is authorized by that specific statute. So we have two statutes here, and they must, and ordinance, and they are in peri materia and must be considered together and must be both given effect in the opinion of the village. The damage to a major part of the building that's alleged in or that's provided for in Section 11-31, I'm sorry, Section 11-13-1, the Zoning Enabling Act, provides for the elimination of buildings where it's destroyed in major part is implemented by our ordinance, the Village Ordinance, which is before us, which provides that specifically that where a nonconforming building is destroyed or damaged to the extent of more than 50 percent, it cannot be rebuilt. It cannot be rebuilt as a nonconforming use. That's correct, Your Honor. Exactly. We're talking specifically about a nonconforming use ordinance and are authorized by a nonconforming use statute or statute that authorizes nonconforming use. So these two can and must be construed together. So where the repairs cannot be legally made to a nonconforming building because of that 50 percent threshold, which is authorized by statute, then it seems to me that really the question of whether or not the repairs are reasonable is irrelevant and immaterial. And in this case, the evidence was more than the greater weight in support of the judge's order finding that the building was damaged to an excess of 50 percent. And we laid that out in our brief. As a matter of fact, the damage was on the basis of Barry Schliebling's testimony, a contractor, almost an excess of 90 percent of the replacement cost. It was more than 50 percent of what the defendant received in insurance settlement proceeds. And it was more than 50 percent of what was paid for the building less than two years before, 15 months before the damage occurred. What is your response to opposing counsel's argument that the statute refers to when it speaks in terms of a dangerous and unsafe condition, it has to be something that's dangerous and unsafe to the public in general? No. That's what I attempted to argue in my brief, and I'm not sure I did it very artfully. I think that the statute, with respect to danger and quality of the building, applies universally, whether or not it's to the public or to a single individual. The statute doesn't make any such restriction. So that was my quote with their use of the word public, and there was no necessity for the court to find that there was a public safety issue here. And furthermore, again, the position of the village is that effect has to be given to Section 604 of the zoning ordinance because it's authorized by another statute. And under the rules of construction, both statutes should be given effect. And they can be given effect in this particular case. There's another overarching issue here with regard to the notice. Yes, I want to address that, Your Honor. It's a major issue to be a candidate. Your opponent's arguing the record is devoid of any notice to the lien holders. What's your response to that? Sure. As it pleases the court, the Section 11-31-1 does not mandate, in our judgment, a lawsuit to be filed against the lien holder of record. I think it gives the municipality the option to join the lien holder of record to a suit. And if the municipality exercised that option to join the lien holder of record in that suit, then I think notice would make sense. You're saying notice is only required if they join the lien holder as a party? Yes. Well, what sense would that make? Because, I mean, arguably put in very specific terms, if that were the case, the building could proceed to demolish a building, the lien holder of the mortgage company could have a security interest in nothing. Don't they have a right to protect their security interest? Yes, I think the lien holder would have the right to protect his security interest, but I don't believe the statute mandates that the lien holder be sued. I think you're probably right on that. But if the record is devoid of notice totally to the lien holder, and arguably and clearly the lien holder has a protectable interest in the property, how would this order to demolish be valid if the lien holder never knows about the litigation? Well, the notice to the lien holder is only provided in that subparagraph I. It is not provided for in that subparagraph II, which we indicate in our brief are two separate issues, and they're specifically not only separated by the disjunctive word or, but they're also separated and distinctively set apart in the alternative by calling them I and II. Well, setting aside the I and II for a moment, is it your position that a building can be demolished without a lien holder ever receiving any type of a notice? Yes. Is that your position? Definitely. Does that seem contrary to logic as well as the law? No, I don't think so. Section 11-13-1, the Zoning and Aiming Ordinance, which authorized 604 of the Village Zoning Ordinance, doesn't require any notice to a lien holder of record, and we've got to consider that. Well, how would a lien holder then, let me ask you this, ever be able to protect their mortgage or their interest in the property if they don't know about the demolition? How could they do that? Well, if the action is brought pursuant, if an ordinance such as the village's, which is invoked here, is brought pursuant to that ordinance, I don't believe they have the right to do that. Who would have the right to do what? I don't think a lien holder of record would have any right to come in and prevent that building from being demolished or compelled. It could force itself into a situation where it would argue to the court that the lien holder of record has the right to repair the building. Well, even if that's true, how does this comport with general due process requirements that you don't take anyone's property without due process of law? It would seem to me if you have an interest in a building and you're able to demolish it and destroy it without notifying somebody who has an interest, how is it not taking property without some type of due process? Well, I don't know that it is taking property without due process of law. The owner of record, it seems to me, here has a greater risk in this kind of litigation than does any lien holder of record. And I think it's a safe presumption that the owner of record is going to protect his interest or try to protect his interest to a greater extent than any lien holder of record. In this particular case, the lien holder, the owner tried the case vigorously. We were before the court several days. Witnesses were presented. And I think the lien holder of record could not be, cannot suggest to this court that it could do a better job at that kind of a trial than the owner did. And I don't think the owner has any due process right to have the lien holder come in here and assist him in his litigation. And the lien holder, the owners did not have, in our opinion, a standing even to raise that issue. The owners' due process rights were not affected one way or another by the absence of a lien holder of record from this lawsuit. Well, that may be true. You raise a very subtle and interesting point. However, whether or not the statutory prerequisites are compliant with, can't that always be raised by the homeowner? I think that in this case where we have the two statutes involved, I've seen and I could find no authority under 1113-1, the Zoning and Ailing Act, requiring a lien holder of record to be made a part of any kind of litigation. Nor is there any requirement, there are no cases on the subject of a lien holder of record. It would be a case of first impression. You think it would be a case of first impression? With respect to the, yes. Okay. As far as the lien holder of record, as far as the lawsuit to a lien holder is concerned, as far as the issue of the ordinance is concerned, the constitutionality of the ordinance has been upheld in the Brower v. Cook County case, which we said in our brief, and which is the zoning work of Cook County was identical to the zoning ordinance of the village. It also, in the case we cited, Kent v. Oak Park National Bank. They're identical. And the Appellate Court in the First District sustained that ordinance, and the Supreme Court sustained the Cook County ordinance. The Brower case has now been repealed, or reversed, by Stokovitch. Is this well enough? Okay. That's all we have, Your Honor. Thank you. All right. Thank you very much, Counsel. Thank you. Thank you. Your Honors, in terms of the countryside case and the application of the ordinance in this case, counsel mentioned that the statute, 1131.1, and the village ordinance were in prior materia. I believe that's not the case. I think the state statute would clearly take precedent over the village ordinance. Furthermore, to reiterate, the statute in the case that was brought under 1131.1 deals with public safety defects and demolition. When can a property be demolished if there are public safety defects? Public safety defects have to be clearly supported by the evidence. In this case, the ordinance applies to something quite a bit different. The purposes of the ordinance and the standards in the ordinance are drastically different from what the Supreme Court has established for 1131.1, in Aurora v. Meyer and, again, affirmed in Stokovitch. And that is, what are the public safety defects, what's the cost to repair those defects, and compare that with the value of the building and determine whether repair is reasonable. So there's no quantitative threshold. The 50% threshold in the ordinance is really anathema to what the Supreme Court has determined in Aurora v. Meyer and in Stokovitch. What is your response to opposing counsel's argument that if, admittedly, the lien holders didn't receive any notice, how does that prejudice your client? What does that have to do with the case? Well, Your Honor, I believe the question you asked in response was, can't that be raised by any party at any time? And it can, if it's jurisdictional. And in this case, it's a prerequisite to filing a lawsuit. The statute says so, and Stokovitch affirms that. So his argument about standing is a red herring, probably. I believe it's a complete red herring. And we were asked to address it, so I'm assuming there's some interest in that question. Again, as I say, if it's jurisdictional, it can be raised by any party at any time. And it was raised below, again, in our brief. We also had other arguments with respect to the notice, deficiency of the notice, because under Stokovitch, one of the purposes of the notice, the main purpose, is to advise the owner that they have the ability to repair. That was at the heart of the Stokovitch case. Whether or not the statute afforded the owner's, Illinois property owner, sufficient opportunity to repair their property before it could be demolished. Stokovitch court found that it did, the statute was sufficient, but because there was a 15-day prior notice, advising the owner that they had the opportunity to make their property safe, which is only fair. Back to the countryside case and the ordinance, the constitutionality of the ordinance is not at issue here. It wasn't at issue in Stokovitch. The constitutionality of the 1131-1 was at issue in Stokovitch only, so there should be no confusion about that. There's no argument about constitutionality of the ordinance, rather the applicability of the ordinance. There is no precedent for doing that, for applying the ordinance's standards to 1131-1. And Aurora v. Meyer and Stokovitch both make it plain that there is no quantitative analysis here. No quantitative threshold, no 50% threshold, which is what the ordinance supplies. The countryside case did not hold that that could be done. The countryside case merely recited the fact that that's what happened below. Nobody challenged it on appeal, so it wasn't before the court. That case predates Aurora v. Meyer. It's not clear that it's 1131-1 that's at issue in that case, and it's never been cited for that proposition. And this is a case of first impression. There is no case law allowing for the ordinance's 50%, and that's, again, different standards. 50% destruction versus replacement cost. So those are two different standards in Aurora v. Meyer and in the ordinance. So there's no precedent for that, and I believe that if that action were to be taken, Aurora v. Meyer is over 40 years old, and nobody's ever tried to do this in a reported decision. I think the legislature would have the first bite of that apple. Otherwise, it should come from the Supreme Court, not a trial court. A trial court shouldn't make that determination. One additional question. Does your analysis make a difference regarding whether or not your client's building is a non-conformant building or a conformant building? The interplay of that other statute? Well, Your Honor, if I could clarify, there's one statute involved in the case, and that's 1131-1. I'm sorry, I meant to say the other ordinance. And then there's the ordinance, the village ordinance, and that's what I was just referring to, that there is no precedent for this supposed interplay between the two. The ordinance deals with whether it can be rebuilt and occupied, not whether the owner can repair any safety defects. Right, but does all of that make a difference if the building in question is a non-conforming building, a non-conforming use versus not? I believe that. There was an allegation about the, I assume they square footage of the building versus the property, the lot line. Zoning lines involved. So my question is, does it make a difference if even if you magically could repair this building, does it make a difference that it was non-conforming? And that seemed to be not in dispute. Right. I don't believe there is a difference. It's under Aurora v. Meyer and Stokovich in particular because that was a non-conforming use building, and the court said it wasn't properly raised. I think if the court had some inkling that that should be a subcategory of cases, then I think the court would address that. So your point is it doesn't make any difference. I don't think there should be. It doesn't matter whether it was a conforming building in its prior life or it was non-conforming. This is the analysis. It's a public safety defect, period. Regardless of what type of structure it is, I don't believe that there is any authority for creating a subcategory of buildings. And in this case, the owner had the property fully insured, and she stands ready, willing, and able. So how can it be unreasonable for her to repair a property? She did the right thing. She had it fully insured. So does that do it? I assume my time is up. Yeah. Thank you both for your arguments. We're going to take a short recess before we resume. See if you wish to do those.